In re FRANK SANTORA EQUIPMENT CORP. and Santora Crane Service, Inc., Debtors.

Nos. CV 96–5910(ADS), CV 96–5911(ADS), CV 96–5917(ADS) and CV 96–5918(ADS).

United States District Court, E.D. New York.

Sept. 6, 1997.

Zeichner, Ellman & Krause by Nathan Schwed, New York City, for Chapter 7 Trustee.

Saretsky, Katz & Dranoff, P.C. by Barry G. Saretsky, New York City, for Sequa Financial Corp.

Jackson & Nash, L.L.P. by Ronald S. Herzog, New York City, for Midlantic Bank, N.A.

Redmond, Pollio & Pittoni, P.C. by M. John Pittoni, Garden City, NY, for Tilden Commercial Alliance, Inc., Tilden of New Jersey, Inc. and National Westminster Bank, USA.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

These related bankruptcy appeals arise from the decision of United States Bankruptcy Judge Dorothy Eisenberg in the procedurally consolidated adversary proceedings brought in the cases *In re Frank Santora Equip. Corp. & Santora Crane Serv., Inc.,* Cas Nos. 892–83119478, 892–83118–478 (Bankr.E.D.N.Y. Oct. 13, 1996), denying the motions of the defendants, Sequa Financial Corporation ("Sequa"), Midlantic Bank, N.A. ("Midlantic"), Tilden Commerical Alliance, Inc., ("Tilden Alliance"), Tilden of New Jersey, Inc. ("Tilden New Jersey") and National

Westminster Bank USA ("NatWest," collectively the "defendants" or "appellants"), to dismiss the complaint or in the alternative for summary judgment. Although the defendants have filed four motions for leave to appeal in separate cases, the motion papers are identical. Accordingly, consistent with the proceedings in the bankruptcy court, this Court will treat these motions together.

### I. *Background*

On June 3, 1992, prior to the effective date of the Bankruptcy Reform Act of 1994, P.L. 103–394, 108 Stat. 4106 (effective Oct. 22, 1994 and codified throughout Title 11 of the United States Code), Frank Santora Equipment Corporation and Santora Crane Service, Inc. (collectively the "Debtors") filed bankruptcy petitions under Chapter 11 of the bankruptcy code. At that time, the Debtors continued operating their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. On October 21, 1993, the Debtors' cases were converted to Chapter 7 liquidation proceedings. On October 29, 1993, the Trustee was appointed interim trustee pursuant to 11 U.S.C. § 701. According to the decision of Bankruptcy Judge Eisenberg, on December 23, 1993 the interim trustee was appointed as permanent trustee pursuant to 11 U.S.C. § 702. The defendants take issue with Judge Eisenberg's application of the December 23, 1993 date for appointment of the permanent trustee, arguing that there is insufficient evidence contained in the record to support this determination.

On December 22, 1995, the Trustee commenced adversary proceedings against forty defendants, including suits against the appellants, to avoid certain transfers pursuant to 11 U.S.C. §§ 547 and 550 as set forth prior to the Bankruptcy Reform Act of 1994. Although there is limited information regarding these proceedings contained in the record on appeal, these actions appear to be captioned: *Trustee v. Sequa Financial Corp.,* Adv. No. 895–8786, (Bankr.E.D.N.Y. Dec. 22, 1995); *Trustee v. Midlantic Bank, N.A.,* Adv. No. 895–8790 (Bankr.E.D.N.Y. Dec. 22, 1995); *Trustee v. Tilden Commercial Alliance, Inc.,* Adv. No. 895–8782 (Bankr.E.D.N.Y. Dec. 22,

1995); *Trustee v. Tilden of N.J., Inc.,* Adv. No. 895–8783 (Bankr.E.D.N.Y. Dec. 22, 1995); *Trustee v. National Westminster Bank. USA,* Adv. No. 895–8773 (Bank. E.D.N.Y. Dec. 22, 1995). Summons and complaints were served on the defendants on January 8, 1996.

According to Judge Eisenberg's decision, between January and June 1996, motions were made by each of the appellants to dismiss the adversary proceedings or in the alternative for summary judgment. On October 13, 1996, the bankruptcy court denied the defendants' motions in a written decision after having rendered a decision from the bench on August 14, 1996. In denying these motions, the court determined that the Trustee's claims were viable under the *Deprizio* doctrine as originally set forth the Court of Appeals for the Seventh Circuit in *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co. ("Deprizio,"))* 874 F.2d 1186 (7th Cir.1989) and explained below. Further, the court held that the Trustee's claims were not time-barred pursuant to 11 U.S.C. § 546. In reaching its conclusion, the bankruptcy court took judicial notice of the fact that "there were hundreds of creditors" a "significant number of [whose loans] were not guaranteed."

The defendants move for leave to appeal Bankruptcy Judge Eisenberg's decision on five grounds:

1. That the bankruptcy court wrongly applied the *Deprizio* doctrine to deny their motions;

2. That the bankruptcy court wrongly held that many of the Trustee's claims are not barred by the applicable statute of limitations;

3. That the bankruptcy court wrongly took judicial notice of the number of creditors whose claims were guaranteed by insiders;

4. That the bankruptcy court wrongly found that the elements necessary to invoke the *Deprizio* doctrine were satisfied; and

5. That the bankruptcy court wrongly determined that the permanent bankruptcy trustee was appointed on December 23, 1993, when there is no evidence in the record to that effect.

## II. Discussion

### A. Standard for leave to appeal

■ The standard applied by district courts sitting in review of interlocutory orders of the bankruptcy court is the same as that set forth in 28 U.S.C. § 1292(b). *See Weiner's, Inc. v. T.G. & Y. Stores Co.,* 191 B.R. 30, 31 (S.D.N.Y.1996); *In re Orlan,* 138 B.R. 374, 377 (E.D.N.Y.1992). The district court should grant leave to appeal from an interlocutory order where the decision of the bankruptcy court involves: (1) a controlling question of law (2) as to which there is a substantial ground for difference of opinion, (3) where immediate appeal may materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b); *Weiner's,* 191 B.R. at 31.

### B. The Deprizio doctrine

■ Initially, the appellants argue that they should be granted leave to appeal the decision of the bankruptcy court on the ground that the Judge Eisenberg wrongly applied the doctrine to preserve the Trustee's claims. As set forth above, this rule of law finds its origins in the Seventh Circuit's decision in *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio Constr. Co.),* 874 F.2d 1186 (7th Cir.1989).

As a preliminary matter, the Court recognizes that the *Deprizio* doctrine was effectively overruled by the amendment to 11 U.S.C. § 550(c) contained in the Bankruptcy Reform Act of 1994, *see* H.R.Rep. No. 835, 103d Cong. 2d Sess. at 44–45, 1994 U.S.Code Cong. & Admin.News pp. 3340, 3352–3353, which statute is not retroactive. *CEPA Consulting, Ltd. v. New York Nat'l Bank (In re Wedtech Corp.),* 187 B.R. 105, 110 (S.D.N.Y. 1995); *Crampton v. First Union Nat'l Bank (In re Conner Home Sales Corp.),* 190 B.R. 255, 260 (E.D.N.C.1995). Accordingly, because these cases were filed well before the effective date of the 1994 Act, the Court will employ the relevant statutory provisions in force at the time of filing. Avoidance of

transfers is governed by 11 U.S.C. § 547(b) and 550. Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title

(B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Section 550 provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit the transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

11 U.S.C. § 550.

In *Deprizio*, the Seventh Circuit held that the trustee was permitted under sections 547(b) and 550 to avoid transfers made to outside creditors between 90 days and one year before the filing of the bankruptcy petition where the transfers were made for the benefit of insiders who had guaranteed the Debtors' obligations. *Deprizio*, 874 F.2d at 1194–95. According to the other courts to consider the issue, this conclusion is dictated by the language of the statute. *See Ray v. City Bank & Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490, 1494 (6th Cir.1990). Section 547(b) provides two sets of deadlines to recover transfers. In general, transfers made to or for the benefit of a creditor, on or within 90 days before the petition is filed, are recoverable. *See* 11 U.S.C. §§ 101(4), (9) (defining the terms "creditor" and "claim"), 547(b)(4)(A). Similar transfers made up to one year prior to the filing of the petition are also recoverable where the creditor is also an insider. *See* 11 U.S.C. §§ 101(4), (9), 547(b)(4)(B). The term "creditor," as applied in this context, includes guarantors. *Deprizio*, 874 F.2d at 1190, citing, 11 U.S.C. § 101(9). The transfers are recoverable from both the initial transferee, or the entity for whose benefit the transfer is made. 11 U.S.C. § 550(a). Further, if the debtor is a corporation, an insider would be a director, officer, or other person in control of the corporation, including relatives of a general partner, director, officer, or person in control of the debtor. *See* 11 U.S.C. § 101(30).

The purpose of the longer time period within which to avoid transfers to or for the benefit of insiders under section 547(b)(4)(B) was designed to prevent creditors with inside knowledge of a debtor's financial distress from taking advantage of that knowledge by rushing to collect on those obligations at the expense of outside creditors who lack the same information. *Deprizio*, 874 F.2d at 1194–95. Similarly, guarantor-insiders would have an incentive to see that the loans they

have guaranteed are paid first in order to eliminate their exposure. *Id.* As a result, the Seventh Circuit concluded that the extended avoidance period established under section 547(b) permits a trustee to recover a transfer to a non-insider where the transaction at issue benefits an insider-guarantor. *Id.* at 1195, 1200–01.

The courts that have considered the validity of the *Deprizio* doctrine are not in agreement. The circuit courts that have addressed the issue have all adopted the doctrine. *See Galloway v. First Alabama Bank (In re Wesley Indus., Inc.),* 30 F.3d 1438, 1441 (11th Cir.1994); *Official Unsecured Creditors' Committee v. United States Nat'l Bank (In re Sufolla, Inc.),* 2 F.3d 977 (9th Cir.1993); *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.),* 993 F.2d 117, 120 (5th Cir. 1993); *T.B. Westex Foods, Inc. v. FDIC (In re T.B. Westex Foods, Inc.),* 950 F.2d 1187 (5th Cir.1992); *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.),* 899 F.2d 1490 (6th Cir.1990); *Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.),* 892 F.2d 850 (10th Cir. 1989); *see also O'Neil v. John Deere Indus. Equip. Co. (In re Northeastern Contracting Co.),* 182 B.R. 673, 674 (Bankr.D.Conn.1995) (recognizing unanimity of circuit courts to apply the doctrine and following suit). However, although the Second Circuit has not yet reviewed the issue, a number of the district courts and bankruptcy courts in New York have rejected the *Deprizio* rule. *See In re Wedtech Corp.,* 187 B.R. at 110; *Rubin Bros. Footwear, Inc. v. Chemical Bank (In re Rubin Bros. Footwear, Inc.),* 119 B.R. 416, 425 (S.D.N.Y.1990); *Pereira v. Lehigh Savs. Bank (In re Artha Mgt.),* 174 B.R. 671, 677 (Bankr.S.D.N.Y.1994); *Weiskopf v. New York Job Development Auth. (In re J.T.L. Supermarket Corp.),* 145 B.R. 3, 4 (Bankr.N.D.N.Y.1992).

In *In re Wedtech,* the court recognized that the "traditional reason" for declining to follow *Deprizio* was that it penalized more cautious creditors. The practical effect of the rule is to place lenders who obtain guarantees from insiders in a worse position than those who operate without such security be-

cause only those creditors with the guarantees will be subject to the longer avoidance period. *Wedtech,* 187 B.R. at 109. "Thus, creditors are faced with a 'catch–22' of either not taking a guarantee and risking nonpayment, or taking a guarantee and risking that payments made by a debtor will be recoverable under Section 550(a)." *Id.* (citation omitted). Accordingly, the net result would be to impede the availability of credit to businesses in financial distress. *Id.* at 109; *Rubin Bros.,* 119 B.R. at 425; *Artha Management,* 174 B.R. at 677; *J.T.L. Supermarket Corp.,* 145 B.R. at 4, (recognizing the "chilling effect" that application of the *Deprizio* doctrine would have on companies' abilities to obtain credit "with respect to corporate loans guaranteed by insiders").

With respect to statutory interpretation, the *Wedtech* court expressed doubt that Congress had ever anticipated the interplay between sections 547(b) and 550(a) as applied under the *Depizio* doctrine which effectively eliminates the distinction between transfers to insiders and non-insiders. In support of this proposition, the court looked to the language of the Bankruptcy Reform Act of 1994, which had the essentially overruled *Deprizio*. *Wedtech,* 187 B.R. at 110. Indeed, the legislative history of the 1994 Act states that *Deprizio* was "wrongly decided." S.Rep. No. 168, 103d Cong., 1st Sess. (1993), 193 WL 444315 (Legislative History Database); *see* H.R.Rep. No. 835 103d Cong., 2d Sess. 44–45 (1994) (stating that the *Deprizio* doctrine is overruled by the Bankruptcy Reform Act of 1994).

Having reviewed these conflicting interpretations, the Court finds that there is a controlling question of law as to which there is substantial ground for difference of opinion with respect to the applicability of the *Deprizio* doctrine. As a result, the inquiry must turn to whether resolution of this issue will materially advance this litigation. According to the Debtors, leave to appeal the bankruptcy court's interpretation of the *Deprizio* doctrine should be denied because the appellants also received an unidentified number of payments within 90 days of the filing of the bankruptcy petition. Recovery of these transfers will have to be litigated regardless

of the outcome of these appeals. As a result, granting leave to appeal would unnecessarily delay litigation of related issues. The Court disagrees.

According to the appellants' reply papers, a reversal of the bankruptcy court's decision with respect to the *Deprizio* doctrine would determine the adversary proceedings against Sequa and NatWest in their entirety. All claims with the exception of one would be resolved against Midlantic. With respect to Tilden Alliance and Tilden New Jersey, approximately 82 percent of the claims would be determined. In the Court's view, such a disposition would "materially advance" the litigation. As a result, the appellant's motion for leave to appeal the bankruptcy court's October 13, 1996 order with respect to application of the *Deprizio* doctrine is granted.

### C. *Statute of limitations*

█ The second issue that the defendants seek leave to appeal is whether the bankruptcy court properly applied the pre-Bankruptcy Reform Act of 1994 two-year statute of limitations for actions by the Trustee to recover preferential payments. According to 11 U.S.C. § 546(a):

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1202, or 1302 of this title; or
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

Relying on "the reasons set forth" by the court in *Gazes v. Kesikrodis (In re Ted A. Petras Furs, Inc.)*, 172 B.R. 170 (Bankr. E.D.N.Y.1994), Judge Eisenberg held that "when a Chapter 11 case is converted to Chapter 7, the Chapter 7 Trustee obtains a new two year time period to commence avoidance actions, which commences to run from the date of the appointment of the permanent Chapter 7 trustee." *Accord Young v. Paramount Communications Inc., (In re Wingspread Corp.)*, 186 B.R. 803 (S.D.N.Y.1995); *Messer v. Harbor Distributing Corp. (In re C & R Beer & Soda. Inc.)*, 186 B.R. 173 (Bankr.E.D.N.Y.1995). Underlying this rule is the Bankruptcy Code's policy " 'to ensure that the trustee has ample time to investigate any potential claims and causes of action for the estate.' " *Petras Furs*, 172 B.R. at 175 & n. 6 (collecting cases), quoting, *A.M. Mancuso v. Continental Bank Nat'l Ass'n of Chicago (In re Topcor)*, 132 B.R. 119, 124–25 (Bankr.N.D.Tex. 1991).

The two-year period runs anew from the appointment of the permanent trustee as opposed to the interim trustee because of the different responsibilities of these two individuals. An interim trustee acts as a caretaker to preserve the estate whereas a permanent trustee must apply a " 'detailed array of professional assistance and investigation' " in order to assess all possible claims and causes of action. *Petras Furs*, 172 B.R. at 175–76, quoting, *Salomon v. Pan American World Airways (In re Black & Geddes)*, 35 B.R. 827 (Bankr.S.D.N.Y.1983).

Applying this rule, the bankruptcy court held that the Trustee was appointed permanent trustee on December 23, 1993, which was the date of the first meeting of the creditors in this Chapter 7 case. Accordingly, the statute of limitations began to run on that date, and the adversary proceedings presently before the Court were timely filed.

Other courts however, have reached a contrary conclusion. In *Mosier v. Kroger Co. (In re IRFM, Inc.)*, 65 F.3d 778 (9th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996), the Ninth Circuit held that the statute of limitations contained in 11 U.S.C. § 546(a) begins to run from the filing of the Chapter 11 bankruptcy petition, and will not be restarted upon the appointment of a Chapter 7 permanent trustee. *Id.* at 781; *accord McCuskey v. Central Trailer Servs., Ltd.*, 37 F.3d 1329, 1332 (8th Cir.1994).

Recognizing the conflicting decisions among the different courts to consider the issue, the district court for the Southern District of New York certified this question for interlocutory appeal to the Second Circuit. *See Wingspread Corp.*, 186 B.R. at 806–07. The appeal was accepted by the Second Circuit but never decided. *See* Def.

Motion for Leave to Appeal, Ex. A. (stipulation withdrawing appeal from the Second Circuit).

Having reviewed the case law, the Court finds that there is a controlling question of law for which there is substantial ground for difference of opinion. A valid statute of limitations defense constitutes an issue of law, and if valid, would dispose of all the claims against Sequa and Midlantic. Accordingly, the defendants' motion for leave to appeal with respect to the statute of limitations issue pursuant to 11 U.S.C. § 546(a) is granted.

In reaching this conclusion, the Court notes the parties' conflicting interpretations of the Second Circuit's decision in *United States Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.),* 22 F.3d 37 (2d Cir.1994), in order to support or oppose the bankruptcy court's decision. However, because interpretation of *Century Brass* is not necessary to resolve the present motions, the Court will not attempt to address this dispute at this time.

### D. *Remaining issues*

■ The remaining issues that the defendants seek leave to appeal are: (1) whether the bankruptcy court properly took judicial notice of the number of creditors who held debts guaranteed by insiders; (2) whether the bankruptcy court could properly find that "[a]ll of the elements necessary for application of the *Deprizio* doctrine exist" where no evidence to this effect has been heard; and (3) whether the bankruptcy court could properly find that a permanent trustee was appointed on December 23, 1993. Because these issues are easily disposed of, the Court will address them together.

In the Court's view, none of these questions involve controlling issues of law. Rather, they constitute questions of fact. For example, whether the bankruptcy court correctly applied the doctrine of judicial notice is really a question as to how many of the creditors had guarantees issued by insiders, if any. The number and nature of the guarantees issued to creditors is a question of fact, and therefore inappropriate for an interlocutory appeal. Similarly, whether the

bankruptcy court found the elements necessary to apply the *Deprizio* doctrine constitutes an issue of fact separate and apart from whether the doctrine is recognized in this circuit. The date the permanent trustee was appointed also constitutes a determination of fact inappropriate for interlocutory review.

■ Finally, the Court notes that Trustee seeks an order that the litigation in the bankruptcy court be permitted to proceed while this appeal is pending in the event that the defendants' motions for leave to appeal are granted. In the Court's view, this application is best brought before the bankruptcy court in the first instance, especially in light of the limited record on appeal. Accordingly, this application is denied without prejudice and with leave to resubmit after being brought before Judge Eisenberg.

### III. *Conclusion*

Having reviewed the parties' submissions, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion for leave to appeal is granted in part, and the defendants are granted leave to appeal the issues of (1) whether the *Deprizio* doctrine applies in this circuit; and (2) whether the statute of limitations operates as a bar to any of the Trustee's claims; it is further

ORDERED, that the defendants' motion for leave to appeal is denied in all other respects; and it is further

ORDERED, that the Trustee's application for permission to continue the litigation before the bankruptcy court while the substance of these appeals is pending is denied without prejudice and with leave to resubmit after being brought before the bankruptcy court for initial determination.

SO ORDERED.