In re FRANK SANTORA EQUIPMENT
CORP., and Santora Crane Service,
Inc., Debtors.

Allan B. Mendelsohn, Chapter 7 Trustee of
the Estate of Frank Santora Equipment
Corp. and Santora Crane Service, Inc.,
Plaintiff–Appellee,

v.

Sequa Financial Corporation,
Defendant–Appellant.

No. CV 96–5911(ADS).

United States District Court,
E.D. New York.

March 23, 1999.

Finkel Goldstein Berzow & Rosenbloom, New York City, by Kevin J. Nash, of Counsel, for Debtors Frank Santora Equipment Corp. and Santora Crane Service, Inc.

Zeichner, Ellman & Krause, New York City, by Peter Janovsky, of Counsel, for Chapter 7 Trustee/Plaintiff–Appellee Allan B. Mendelsohn.

Saretsky, Katz & Dranoff, P.C., New York City, by Barry G. Saretsky, of Counsel, Gary Franklin, for Defendant–Appellant Sequa Financial Corporation.

#### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This matter is on appeal from the October 13, 1996 interlocutory order of the Honorable Dorothy D.T. Eisenberg, United States Bankruptcy Judge for the Eastern District of New York, and the September 6, 1997 Order of this Court granting leave to appeal two novel issues which, apparently, the Second Circuit has not yet resolved, regarding the application of the pre-Bankruptcy Reform Act of 1994: (1) whether the Bankruptcy Court properly applied the *Deprizio* doctrine to the avoidance and recovery of alleged preferential transfers which the Debtor made to the Appellant between 90 days and one year prior to the filing of the bankruptcy petition; and (2) whether the Bankruptcy Court correctly held that the two-year statute of limitations on the Chapter 7 Trustee's preference avoidance claims began to run anew upon being appointed as permanent trustee and replacing the debtor-in-possession.

## I. PROCEDURAL HISTORY OF THE CASE

This appeal arises from the decision of the Bankruptcy Court in the procedurally consolidated adversary proceedings brought in the cases *In re Frank Santora Equip. Corp. & Santora Crane Serv., Inc.*, Cas Nos. 892–83119478, 892–83118–478 (Bankr.E.D.N.Y. Oct. 13, 1996). In its decision, the Bankruptcy Court denied the motions for dismissal and summary judgment by eight of the forty-one defendants, including the appellant, Sequa Financial Corporation ("Sequa"). Although there were initially eight moving defendants who filed at total of four motions under four separate dockets before this Court seeking leave to appeal in separate cases, the motion papers were identical and treated together by this Court in an earlier decision.

The defendants, including Sequa, moved for leave to appeal to this Court on the grounds that the Bankruptcy Court erred by: (1) applying the *Deprizio* doctrine to deny their motions; (2) holding that many of the Trustee's claims are not barred by the applicable statute of limitations; (3) taking judicial notice of the number of creditors whose claims were guaranteed by insiders; (4) finding that the elements necessary to invoke the *Deprizio* doctrine were satisfied; and (5) determining that the permanent bankruptcy trustee was appointed on December 23, 1993, when there is no evidence in the record to that effect.

In a Memorandum of Decision and Order dated September 6, 1997, this Court granted the defendants' motion for leave to appeal the following two issues: (1) whether the *Deprizio* doctrine applies in the Second Circuit; and (2) whether the statute of limitations operates as a bar to any of the Trustee's claims. *In re Frank Santora Equipment Corp.*, 213 B.R. 420 (E.D.N.Y. 1997). The Court denied the defendants' motion for leave to appeal the other issues. In addition, the Court directed that the Trustee's application for permission to continue the litigation before the Bankruptcy Court while the substance of these appeals

is pending be resubmitted to the Bankruptcy Court for an initial determination.

In the ensuing months, only one of the four dockets, namely, Docket Number CV 96–5911, reflected any activity. Following a status conference, on notice to all parties on February 5, 1998, all except Docket Number CV 96–5911 were dismissed either on consent or without objection. Thereafter, by Memorandum of Decision and Order dated October 26, 1998, this Court denied the motion by the defendants NatWest Bank USA, Tilden Commercial Alliance and Tilden of New Jersey, for an "Order permitting them to be included in the pending appeal," given their failure to file appellate briefs, to attend the status conference, or to request any adjournment of the conference. *In re Frank Santora Equipment Corp.*, 227 B.R. 206 (E.D.N.Y.1998).

## II.  BACKGROUND

On June 3, 1992, prior to the effective date of the Bankruptcy Reform Act of 1994, P.L. 103–394, 108 Stat. 4106 (effective Oct. 22, 1994 and codified throughout Title 11 of the United States Code), Frank Santora Equipment Corporation and Santora Crane Service, Inc. (collectively the "Debtors") filed bankruptcy petitions under Chapter 11 of the Bankruptcy Code. At that time, the Debtors continued operating their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

On October 21, 1993, the Debtors' cases were converted to Chapter 7 liquidation proceedings. On October 29, 1993, the Trustee was appointed interim trustee pursuant to 11 U.S.C. § 701. The interim trustee was appointed as permanent trustee pursuant to 11 U.S.C. § 702 on December 23, 1993.

On December 22, 1995, and within two years of being appointed permanent trustee, the Trustee commenced adversary proceedings against 40 creditors, including Sequa, to avoid certain alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550, as set forth prior to the Bankruptcy Reform Act of 1994. The Trustee sought to recover a sum in excess of $469,471.53, as stated in the November 22, 1996 amended complaint. These transfers, made to non-insider transferee creditors, were made more than 90 days before the Debtor's bankruptcy filing, but less than one year before the filing.

Between January 1996 and June 1996, Sequa and the other defendants moved to dismiss the adversary proceedings or in the alternative for summary judgment on the grounds that: (1) Sequa was not subject to a preference action because the Debtor made the payments to Sequa more than 90 days before the bankruptcy filing and the *Deprizio* doctrine was inapplicable; and (2) the two-year statute of limitations barred the Trustee's claim.

On October 13, 1996, the Bankruptcy Court denied the defendants' motions in a written decision after having rendered a decision from the bench on August 14, 1996. In denying these motions, the Bankruptcy Court determined that the Trustee's claims were viable under the *Deprizio* doctrine, as originally set forth the Court of Appeals for the Seventh Circuit in *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co. ("Deprizio"))*, 874 F.2d 1186. Further, the Bankruptcy Court held that the Trustee's claims were not time-barred under to 11 U.S.C. § 546.

## III.  DISCUSSION

### A.  The Standard on Appeal

■ On appeal from a decision of a Bankruptcy Court, conclusions of law are reviewed de novo, while factual conclusions are reviewed for clear error. *See National Union Fire Ins. Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996); *see also* Fed.R.Bankr.P. 8013.

### B.  The *Deprizio* Doctrine

■ The first issue confronting this Court is whether the Bankruptcy Court impermissibly applied the *Deprizio* doctrine to preserve the Trustee's claims. As noted above, this doctrine finds its origins in the Seventh Circuit's 1989 decision in *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio Constr. Co.)*, 874 F.2d 1186.

Preliminarily, the Court recognizes that the *Deprizio* doctrine was effectively overruled by the amendment to 11 U.S.C.

§ 550(c) contained in the Bankruptcy Reform Act of 1994, *see* H.R.Rep. No. 835, 103d Cong.2d Sess. at 44–45, 1994 U.S.Code Cong. & Admin.News pp. 3340, 3352–3353, which statute is not retroactive. *CEPA Consulting, Ltd. v. New York Nat'l Bank (In re Wedtech Corp.)*, 187 B.R. 105, 110 (S.D.N.Y. 1995); *Crampton v. First Union Nat'l Bank (In re Conner Home Sales Corp.)*, 190 B.R. 255, 260 (E.D.N.C.1995). Because this case was filed well before the effective date of the 1994 Act, in this determination the Court will be governed by the relevant statutory provisions in force at the time of the filing.

Avoidance of transfers is governed by 11 U.S.C. § 547(b) and § 550. Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) *on or within 90 days before the date of the filing of the petition;* or

(B) *between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider;* and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added).

Section 550, in turn, provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit the transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

11 U.S.C. § 550.

In *Deprizio*, the Seventh Circuit held that the Trustee was permitted, under Sections 547(b) and 550 to avoid transfers made to outside creditors between 90 days and one year before the filing of the bankruptcy petition where the transfers were made for the benefit of insiders who had guaranteed the Debtors' obligations. *Deprizio*, 874 F.2d at 1194–95. The Court reached this result by literally reading section 550(a)(1) so as to enable the trustee to recover from "the initial transferee" (the noninsider) although "the entity for whose benefit such transfer was made" (the insider guarantor) is the truly culpable party.

The *Deprizio* analysis begins with Section 547(b), which defines those transfers that are avoidable. *Deprizio*, 874 F.2d at 1194. Transfers benefitting inside creditors are subject to the extended preference period of Section 547(b)(4)(B). Under the ruling in *Deprizio*, once it is determined that the elements of Section 547(b) are satisfied, the unambiguous language of Section 550(a) then identifies the party responsible for repayment of the preference. *Id.* Section 550(a), unlike Section 547(b), makes no distinction between insiders and outsiders; recovery

may be obtained from either the initial transferee (the outside creditor) or the entity for whose benefit the transfer was made (the inside creditor). *Id.; see also In re Sufolla, Inc.,* 2 F.3d 977 (9th Cir.1993) (discussing *Deprizio* ).

According to the other courts to consider the issue, this conclusion is dictated by the plain and unambiguous language of the statute. *See, e.g., Ray v. City Bank & Trust Co. (In re C–L Cartage Co.),* 899 F.2d 1490, 1494 (6th Cir.1990). Section 547(b) provides two sets of deadlines to recover transfers. In general, transfers made to or for the benefit of a creditor, on or within 90 days before the petition is filed, are recoverable. *See* 11 U.S.C. §§ 101(4), (9) (defining the terms "creditor" and "claim"), 547(b)(4)(A). Similar transfers made up to one year prior to the filing of the petition are also recoverable where the creditor is also an insider. *See* 11 U.S.C. §§ 101(4), (9), 547(b)(4)(B). The term "creditor," as applied in this context, includes guarantors. *Deprizio,* 874 F.2d at 1190 (citing 11 U.S.C. § 101[9] ). The transfers are recoverable from both the initial transferee and the entity for whose benefit the transfer is made. 11 U.S.C. § 550(a). Further, if the debtor is a corporation, an insider would be a director, officer, or other person in control of the corporation, including relatives of a general partner, director, officer, or person in control of the debtor. *See* 11 U.S.C. § 101(30).

■ The purpose of the longer time period within which to avoid transfers to or for the benefit of insiders under Section 547(b)(4)(B) was designed to prevent creditors with inside knowledge of a debtor's financial distress from taking advantage of that knowledge by rushing to collect on those obligations at the expense of outside creditors who lack the same information. *Deprizio,* 874 F.2d at 1194–95. Similarly, guarantor-insiders would have an incentive to see that the loans they have guaranteed are paid first in order to eliminate their exposure. *Id.* As a result, the Seventh Circuit concluded that the extended avoidance period established under Section 547(b) permits a trustee to recover a transfer to a non-insider where the transaction at issue benefits an insider-guarantor. *Id.* at 1195, 1200–01.

As the parties emphasize, the Second Circuit has never considered the issue. However, the five Circuit Courts of Appeals that have addressed the issue—the Fifth, Sixth, Ninth, Tenth and Eleventh Circuits—have following *Deprizio*'s lead. *See, e.g., Galloway v. First Alabama Bank (In re Wesley Indus., Inc.),* 30 F.3d 1438, 1441 (11th Cir. 1994); *Official Unsecured Creditors Committee v. United States Nat'l Bank (In re Sufolla, Inc.),* 2 F.3d 977 (9th Cir.1993); *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.),* 993 F.2d 117, 120 (5th Cir.1993); *T.B. Westex Foods, Inc. v. FDIC (In re T.B. Westex Foods, Inc.),* 950 F.2d 1187 (5th Cir.1992); *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.),* 899 F.2d 1490 (6th Cir.1990); *Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.),* 892 F.2d 850 (10th Cir.1989). Also, in *The Travelers Insurance Company v. Cambridge Meridian Group, Inc. (In re Erin Food Services, Inc.) ("Erin"),* 980 F.2d 792 (1st Cir.1992), the First Circuit assumed, without deciding, the correctness of *Deprizio.*

In contrast, a few District and Bankruptcy Courts in the Second Circuit have rejected *Deprizio. See, e.g., In re Wedtech Corp.,* 187 B.R. 105 (S.D.N.Y.1995); *Rubin Bros. Footwear, Inc. v. Chemical Bank (In re Rubin Bros. Footwear, Inc.),* 119 B.R. 416, 425 (S.D.N.Y.1990); *Pereira v. Lehigh Savs. Bank (In re Artha Mgt.),* 174 B.R. 671, 677 (Bankr.S.D.N.Y.1994); *Weiskopf v. New York Job Development Auth. (In re J.T.L. Supermarket Corp.),* 145 B.R. 3, 4 (Bankr. N.D.N.Y.1992).

After a review of the precedents, this Court is not persuaded by Sequa's arguments in favor of rejecting the *Deprizio* holding, all of which were effectively dealt with in the above cited Circuit Court cases. Instead, this Court is of the view that the language of the Code provisions, in effect at the time of the transfer in this proceeding, compels the conclusion reached in *Deprizio,* and that the Court of Appeals for the Second Circuit would adopt the view of the other Circuit Courts which have addressed the issue.

One aspect of the appellant's argument bears further explanation. The appellant makes a cogent argument that the Court must reject the *Deprizio* doctrine on the ground that the legislative history underlining the amendment to 550 specifically references *Deprizio*, and states that the "section overrules the *Deprizio* line of cases and clarifies that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90–day statutory period." H.R.Rep. No. 835, 103rd Cong., 2nd Sess. 140 (1994), reprinted in 1994 U.S.C.C.A.N. 3340.

■ The essential cannon of statutory construction is that if the terms of a statute are clear and unambiguous, the plain meaning of the statutory language controls. *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). "In other words, only if the meaning of the statute is not clear on its face should a court resort to the contemporaneous legislative history in ascertaining its meaning. Subsequent legislative history undoubtedly falls even lower in the pecking order of acceptable authority." *In re Conner Home Sales Corp.,* 190 B.R. 255, 259–60 (E.D.N.C.1995) (discussing legislative history of *Deprizio* ). By the same token, "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broadcasting Co., Inc. v. FCC,* 395 U.S. 367, 380–81, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Thus, the Supreme Court has held that clarifying legislation "leaves no doubt as to the prospective interpretation of the statute ... [and holds] considerable retrospective weight." *Heckler v. Turner,* 470 U.S. 184, 211, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985).

■ Citing such authority, Sequa maintains that Section 550 is ambiguous and urges this court to reverse the Bankruptcy Court's decision based on the subsequent legislative history. However, this Court agrees with the following statement:

[T]his court is convinced that the subsequent legislative history accompanying the amendment to § 550 should not control the outcome in this matter. The fact remains that Congress chose not to make the amendment to § 550 retroactive....

[A] court should not act like a legislature just as a legislature should not act like a court. Yet to apply the subsequent legislative history of § 550 to this pre-Reform Act transaction would in essence allow the legislative history to be given retroactive application. This is a form of judicial activism of which this court will not be a part.

*In re Conner Home Sales Corp.,* 190 B.R. at 259–60.

For the foregoing reasons, this Court concludes that the Bankruptcy Court properly applied the *Deprizio* doctrine, and the Bankruptcy Court's decision denying Sequa's summary judgment motion regarding this issue was proper and is affirmed.

## C. Statute of limitations

■ The second issue on appeal is whether the Bankruptcy Court properly applied the pre-Bankruptcy Reform Act of 1994, two-year statute of limitations for actions by the Trustee to recover preferential payments. Bankruptcy Code § 546(a) imposes a two year statute of limitations on avoidance actions under the Code. Sequa claims that the Trustee did not timely commence this adversary proceeding, on or about December 22, 1995, because the two-year statute of limitations period should have begun on June 3, 1992, the date when the Chapter 11 bankruptcy petitions were filed and the Debtors began serving as debtors-in-possession. On the other hand, the Trustee insists that the two-year period began running when he was appointed permanent trustee on December 23, 1993, after the Debtors' Chapter 11 cases were converted to Chapter 7 proceedings.

Pursuant to 11 U.S.C. § 546(a):

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1202, or 1302 of this title; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

Relying on *Gazes v. Kesikrodis (In re Ted A. Petras Furs, Inc.),* 172 B.R. 170 (Bankr.

**492**

E.D.N.Y.1994), the Bankruptcy Court found in the Trustee's favor, and held that "when a Chapter 11 case is converted to Chapter 7, the Chapter 7 Trustee obtains a new two-year time period to commence avoidance actions, which commences to run from the date of the appointment of the permanent Chapter 7 trustee." *See also Young v. Paramount Communications Inc., (In re Wingspread Corp.),* 186 B.R. 803 (S.D.N.Y.1995); *Messer v. Harbor Distributing Corp. (In re C & R Beer & Soda, Inc.),* 186 B.R. 173 (Bankr.E.D.N.Y.1995). Underlying this rule is the Bankruptcy Code's policy " 'to ensure that the trustee has ample time to investigate any potential claims and causes of action for the estate.' " *Petras Furs,* 172 B.R. at 175 & n. 6 (collecting cases) (quoting *A.M. Mancuso v. Continental Bank Nat'l Ass'n of Chicago (In re Topcor),* 132 B.R. 119, 124–25 [Bankr.N.D.Tex.1991] ). Further, the two-year period runs anew from the appointment of the permanent trustee as opposed to the interim trustee because of the different responsibilities of these two individuals. An interim trustee acts as a caretaker to preserve the estate, while a permanent trustee must apply a " 'detailed array of professional assistance and investigation' " in order to assess all possible claims and causes of action. *Petras Furs,* 172 B.R. at 175–76 (quoting *Salomon v. Pan American World Airways (In re Black & Geddes),* 35 B.R. 827 [Bankr.S.D.N.Y.1983] ).

Applying this rule, the Bankruptcy Court held that the Trustee was appointed permanent trustee on December 23, 1993, which was the date of his appointment as permanent trustee and the first meeting of the creditors in this Chapter 7 case. Accordingly, the Bankruptcy Court concluded that the statute of limitations began to run on that date, and the adversary proceedings presently before the Court were timely filed.

As observed in this Court's earlier decision granting leave, some other courts have reached a contrary conclusion. In *Mosier v. Kroger Co. (In re IRFM, Inc.),* 65 F.3d 778 (9th Cir.1995), *cert. denied,* 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996), the Ninth Circuit held that the statute of limitations contained in 11 U.S.C. § 546(a) begins to run from the filing of the Chapter 11 bankruptcy petition, and will not be restarted upon the appointment of a Chapter 7 permanent trustee. *Id.* at 781; *accord McCuskey v. Central Trailer Servs., Ltd.,* 37 F.3d 1329, 1332 (8th Cir.1994).

As was the case with the *Deprizio* doctrine, the Second Circuit has not yet squarely addressed this issue. Recognizing the absence of direct authority in the Second Circuit and the conflicting decisions among the different courts to consider the issue, the District Court for the Southern District of New York certified this question for interlocutory appeal to the Second Circuit in *Wingspread Corp.,* 186 B.R. at 806–07. The appeal was accepted by the Second Circuit, but never decided because the parties filed a stipulation withdrawing the appeal.

Central to the parties' dispute is their conflicting interpretation of the Second Circuit's decision in *United States Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.),* 22 F.3d 37 (2d Cir.1994). In this Court's view, and contrary to Sequa's contention, *Century Brass* is not dispositive. There, the Second Circuit concluded that the two-year statute of limitations applies to debtors-in-possession. Significantly, however, the Court expressly declined to address the question of whether the appointment of a trustee "might revive a claim that the [debtor-in-possession] itself would have been barred from bringing." *Century Brass,* 22 F.3d at 41. As one district court in this Circuit has observed "*Century Brass* does not foreclose a literal interpretation of § 546 where it is directly applicable; it only requires a non-literal interpretation where § 546 is applicable through the lens of § 1107. Thus, the *Century Brass* ruling does not prevent this Court from giving effect to the plain meaning of § 546 where a trustee is in fact appointed." *In re Wingspread Corp.,* 186 B.R. 803, 805 (S.D.N.Y.1995) (holding that a two-year statute of limitations began to run when debtor in possession was replaced by a trustee for conversion to Chapter 7). This leads the Court to conclude that this issue has never been resolved by the Second Circuit.

In this regard, Sequa urges this Court to follow the Ninth Circuit's decision in *Mosier v. Kroger Co. (In re IRFM, Inc.), supra.* In *IRFM,* a panel of the Ninth Circuit held that replacement of a debtor-in-possession with a Chapter 7 trustee, appointed under 11 U.S.C. § 702, did not restart the limitations period. *IRFM,* 65 F.3d at 780–81. Upon reflection, the Court declines to follow *IRFM,* especially in view of the fact that another panel of the Ninth Circuit evidently reached a contrary conclusion and found that the replacement of a debtor in possession with a Chapter 11 trustee, appointed under 11 U.S.C. § 1104, restarts Section 546(a)(1)'s statute of limitations. *See John Mitchell, Inc. v. Steinbrugge (In re Hanna)* 72 F.3d 114 (9th Cir.1995); *see also In re Kaypro,* 230 B.R. 400 (9th Cir. BAP 1999) (following *In re Hanna*). In *In re Hanna,* 72 F.3d 114, 116 (9th Cir.1995), a Chapter 11 trustee brought an avoidance action more than two years after the debtor's Chapter 11 bankruptcy petition was filed. The defendant argued that because the statute of limitations runs from appointment of the "first trustee," and a debtor in possession was the "functional equivalent" of a trustee, the statute did no restart when the Chapter 11 trustee was appointed. The Ninth Circuit rejected this argument and, reviewing earlier precedents in light of Sections 546 and 1104, the Court held that although the statute of limitations begins to run when a debtor files his bankruptcy petition, it restarts when a Chapter 11 trustee is appointed. *See also In re DeLaurentiis Entertainment Group Inc.,* 87 F.3d 1061, 1063 (9th Cir.) (discussing and following *In re Hanna*), *cert. denied* 519 U.S. 1007, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996).

Having reviewed the conflicting viewpoints, this Court now determines to follow the sound reasoning set forth in Judge Leisure's thoughtful opinion in *In re Wingspread Corp.,* 186 B.R. 803. In *Wingspread Corp.,* Judge Leisure began by observing the "fundamental canon that statutory interpretation begins with the language of the statute itself." *Id.* at 805 (citations omitted). "When the words of a statute are unambiguous ..." and "the statutory scheme is coherent and consistent," there is no need to inquire further. *Id.* (citations omitted). Guided by such principles, the Court was "persuaded that the plain language of the statute should govern the outcome in this case and [saw] no reason to depart from Congress's clear language." *Id.* The Court found that the plain meaning of Section 546(a)'s language—namely, that "An action or proceeding under section 544, 545, 547, 548, or 553 ... may not be commenced ... two years after the appointment of a trustee"—provides for a limitations period for avoidance actions running from the appointment of a trustee, and not from the filing of the bankruptcy petition. The *Wingspread Corp.* Court ultimately concluded that " '[T]he most logical interpretation of section 546(a) is that the statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same statute of limitations.' " *Id.* at 806 (quoting *In re San Joaquin Roast Beef,* 7 F.3d 1413, 1415 [9th Cir.1993]). The Court further stated that the "Code clearly states that a trustee appointed under section 702 of the Code has until two years after that appointment to commence an action under Sections 544, 545, 547, 548, or 553." *Id.* (citing the Bankruptcy Court's decision in *Young v. Paramount Communications Inc. (In re Wingspread Corp.),* 178 B.R. 938, 943 [Bankr.S.D.N.Y. 1995]).

In the Court's view, the Trustee's action was timely under the reasoning set forth in *Wingspread Corp.,* and the Bankruptcy Court's ruling denying Sequa's summary judgment motion regarding the statute of limitations was proper and is affirmed.

## IV. CONCLUSION

After reviewing the parties' submissions, and for the reasons set forth above, it is hereby

**ORDERED,** that the decisions of the Bankruptcy Court are affirmed in all respects and it is hereby

**ORDERED,** that the Clerk of the Court is directed to close this case.